United States District Court
Southern District of Texas
**FILED**

**MAY 20 2021**

**Nathan Ochsner, Clerk**

United States District Court
Southern District of Texas

**, ENTERED**

May 21, 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

|  |  |  |
|---|---|---|
| BRIAN L. EDWARDS, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:20-CV-38 |
| VS. | § | |
| | § | |
| BOBBY LUMPKIN,[1] | § | |
| | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Brian L. Edwards, a state prisoner proceeding *pro se*, initiated this action by

filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket No. 2), along with

a supporting memorandum (Docket No. 1) and supplemental statement (Docket No. 6.)  In 2017,

Petitioner was convicted of three counts of assault against a public servant and was sentenced to

five years confinement in the Institutional Division of the Texas Department of Criminal Justice

(TDCJ).  In seeking federal habeas corpus relief, Petitioner does not challenge his conviction or

sentence, but rather his claims address the decision by the Texas Board of Pardons and Paroles in

2019 to deny his release to discretionary mandatory supervision.

Respondent has moved for summary judgment, arguing that Petitioner's claims should be

dismissed because they are partially unexhausted and are otherwise without merit.  (Docket No.

17.)  In response, Petitioner has filed a "Motion for Judgment as Matter of Law" (Docket No. 20),

which the Court construes as a response in opposition to the motion for summary judgment.

---

[1] The previously named respondent in this action was Lorie Davis.  In the time since this lawsuit
has been filed, Bobby Lumpkin has succeeded Davis as Director of the Texas Department of Criminal
Justice – Correctional Institutions Division.  Under Rule 25(d) of the Federal Rules of Civil Procedure,
Lumpkin is automatically substituted as a party.  The Clerk is **INSTRUCTED** to update the docket
accordingly.

After carefully considering the pleadings in this case, the record, and the applicable law, the undersigned concludes that the § 2254 petition should be denied. As explained further below, Petitioner's due process rights were not violated and his claims should be dismissed as meritless. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and that this action be dismissed.

## I. BACKGROUND

In 2017, Petitioner was charged with aggravated assault against a public servant in Cause Nos. F17-1590-211, F17-1591-211, and F17-1592-211 in the 211th Judicial District Court of Denton County, Texas. (Docket No. 13-2, at 4; Docket No. 13-7, at 5; Docket No 13-12, at 5.) Petitioner pleaded guilty in each case to the lesser included offense of assault against a public servant and received a five-year prison sentence in each case, to run concurrently. (*See* Docket No. 13-2, at 16–17; Docket No. 13-7, at 17–18; Docket No. 13-12, at 17–18.)

On June 5, 2019, Petitioner was given notice that he would be considered for release to discretionary mandatory supervision (also referred to as "DMS"). (Docket No. 17-1, at 4). He was provided with the opportunity to submit any additional information he wanted to the Texas Board of Pardons and Paroles (the Board) to consider when making its decision. (*Id.*) On July 17, 2019, the Board informed Petitioner that he had been denied release to DMS. (*Id.*) The Board listed five reasons for its decision:

1D.   The record indicates that the offender has repeatedly committed criminal episodes that indicate a predisposition to commit criminal acts upon release.

2D.   The record indicates that the instant offense has elements of brutality, violence, assaultive behavior, or conscious selection of victim's vulnerability indicating a conscious disregard for the lives, safety or property of others, such that the offender poses a continuing threat to public safety.

3D.   The record indicates excessive substance use involvement.

2

5D.     The record indicates unsuccessful periods of supervision on previous probation, parole, or mandatory supervision that resulted in incarceration, including parole-in-absentia.

9D1.    The record indicates that the offender's accrued good conduct time is not an accurate reflection of the offender's potential for rehabilitation.

9D2.    The record indicates that the offender's release would endanger the public.

(*Id.*; *see also Parole / Mandatory Supervision Info.*, Tex. Bd. of Pardons & Paroles, https://www.tdcj.texas.gov/bpp/what_is_parole/reasons.htm (last visited May 18, 2021)).

On February 6, 2020,[2] Petitioner filed three state applications for writ of habeas corpus, one for each of his three assault convictions. In his state applications, Petitioner challenged the Board's July 17, 2019, decision denying release to DMS on due process grounds.[3] (*See* Docket No. 13-4, at 24–25; Docket No. 13-7, at 24–25; Docket No. 13-12, at 24–25.) On August 26, 2020, the Texas Court of Criminal Appeals denied Petitioner's state habeas applications "without written order on findings of trial court without hearing and on the court's independent review of the record." (Docket No. 13-3; Docket No. 13-6; Docket No. 13-11.)

In February 2020, the Clerk docketed Petitioner's instant federal petition for writ of habeas corpus pursuant to 28 U.SC. § 2254 and supporting memorandum, challenging the Board's July 17, 2019, decision denying release to discretionary mandatory supervision. (*See* Docket Nos. 1, 2.) Petitioner also filed a supplemental statement. (Docket No. 6). Although the claims asserted in Petitioner's § 2254 petition and accompanying memoranda are somewhat difficult to follow,

---

[2] Petitioner signed the writs on February 6, 2020, which is the earliest possible date that they could be considered filed. (*See* Docket No. 13-4, at 34; Docket No. 13-7, at 34; Docket No. 13-12, at 34.)

[3] In his three state applications, Petitioner also challenged his underlying assault convictions, arguing that his trial attorney provided ineffective assistance, there was prosecutorial misconduct, and that his guilty plea was involuntary. (*See* Docket No. 13-4, at 26–31; Docket No. 13-7, at 26–31; Docket No. 13-12, at 26–31.)

Petitioner's main arguments challenging the Board's decision may be broadly construed as follows:

- Petitioner was illegally denied release on DMS in violation of his due process rights;
- The Board violated Petitioner's due process rights when it failed to prove that Petitioner's release would endanger the public;
- The Board violated Petitioner's rights when it revoked his good-time / work-time credits without due process of law;
- The adversarial procedures utilized by the Board violate the Constitution because no evidence was disclosed and there was no opportunity to challenge the parole file or to be heard in person; and
- The Board's decision to deny release to DMS is arbitrary and capricious.

(Docket No. 2, at 6–7; *see also* Docket No. 6; Docket No. 1.)

Respondent has filed a motion for summary judgment, arguing that Petitioner's claims should be dismissed because they are partially unexhausted and are otherwise without merit.[4] (Docket No. 17.)  In response, Petitioner has filed a "Motion for Judgment as Matter of Law." (Docket No. 20.)

## II.  ANALYSIS

### A.  *Pro Se* Pleadings

*Pro se* pleadings are held to less stringent standards than those drafted by attorneys. *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (citing *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Hernandez*, 630 F.3d at 426 (citations omitted).  But even under a liberal construction, "[p]ro se litigants must

---

[4] In August 2020, Respondent filed a motion to stay the instant case because the Texas Court of Criminal Appeals had not yet ruled on Petitioner's state habeas applications. (*See* Docket No. 11.)  The following month, Respondent filed an Advisory asking the Court to withdraw the motion to stay as moot, as the Court of Criminal Appeals had since issued a decision on Petitioner's state applications. (*See* Docket No. 14.)  On October 5, 2020, Magistrate Judge Peter Ormsby, to whom this case was previously assigned, denied Respondent's motion to stay as moot and instructed Respondent to file an answer or other response by November 20, 2020. (Docket No. 15.)

properly plead sufficient facts that, when liberally construed, state a plausible claim for relief . . .

." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014).

**B.      Exhaustion of State Remedies**

Respondent argues that several of Petitioner's claims asserted in his § 2254 petition should be dismissed because he has failed to exhaust his state remedies as required by 28 U.S.C. § 2254(b), (c).  (Docket No. 17, at 8–12.)  In his § 2254 petition, Petitioner asserts that his claims are properly raised for the first time in his federal writ of habeas corpus because "pursuant [to] Tx Govt Code § 508.149(d) no administrative or judicial review [is] available and circumstances exist rendering any other process ineffective to protect the constitutional rights of the petitioner." (*See* Docket No. 2, at 8.)

As explained by Respondent in its motion for summary judgment, several of Petitioner's claims challenging his DMS denial appear subject to dismissal for failure to exhaust administrative remedies.  More fundamentally, however, habeas relief should be denied because Petitioner cannot demonstrate a constitutional violation in this case, as explained below.  *See* 28 U.S.C. § 2254(b)(2) (stating that a § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

**C.      AEDPA Standard of Review**

Federal law authorizes a court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Federal habeas proceedings must honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), *overruled in part on other grounds, Lindh v. Murphy*, 521 U.S. 320 (1997).

Since 1996, federal courts have given effect to the traditional limits on habeas corpus review through the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act (the AEDPA), which "embodies the principles of federalism, comity, and finality of judgments." *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002) (citation omitted). The AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000) (citation omitted). "[Section] 2254(d)'s 'highly deferential standard for evaluating state-court rulings' . . . demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a federal court cannot grant habeas relief on issues adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (quoting 28 U.S.C. § 2254(d)); *Cobb v. Thaler*, 682 F.3d 364, 372–73 (5th Cir. 2012) (same).

1.   Due Process Claims

Although stated as several grounds for relief, Petitioner's principal claim is that the Board's decision denying him release to discretionary mandatory supervision violated his Due Process rights under the Fourteenth Amendment.

In Texas, there are two ways in which an inmate becomes eligible for early release from prison: the first is by "parole" and the second is by "mandatory supervised release." *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007). "Parole . . . is 'the discretionary and conditional

6

release of an eligible inmate sentenced to the institutional division so that the inmate may serve

the remainder of the inmate's sentence under the supervision of the pardons and paroles division.'"

*Id.* (quoting Tex. Gov't Code § 508.001(6)). Because parole is entirely discretionary, there is no

liberty interest in parole that is protected by the Due Process Clause. *See Teague*, 482 F.3d at 774;

*Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995).

Mandatory supervision, on the other hand, is "the release of an eligible inmate sentenced

to the institutional division so that the inmate may serve the remainder of the inmate's sentence

not on parole but under the supervision of the pardons and paroles division." Tex. Gov't Code §

508.001(5). In contrast to parole, an inmate's release to mandatory supervision is required when

the "actual calendar time the inmate has served plus any accrued good conduct time equals the

term to which the inmate was sentenced." Tex. Gov't Code § 508.147(a); *Jackson v. Johnson*, 475

F.3d 261, 263, n.1 (5th Cir. 2007). An inmate may not be released to mandatory supervision,

however, if he has been convicted of certain crimes listed in Texas Government Code §

508.149(a)—which are not relevant here—or if the parole panel determines that (1) the inmate's

accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation;

and (2) the inmate's release would endanger the public. *See* Tex. Gov't Code § 508.149.

Both the Fifth Circuit and Texas courts have held that the mandatory supervision scheme

creates a protected liberty interest entitled to minimum due process protection. *See, e.g.*, *Teague*,

482 F.3d at 776; *Ex parte Geiken*, 28 S.W.3d 553, 557–58 (Tex. Crim. App. 2000). In this context,

constitutional due process requires that an eligible inmate be provided "notice and a meaningful

opportunity to be heard." *Ex parte Geiken*, 28 S.W.3d 553 at 560 (citing *LaChance v. Erickson*,

522 U.S. 262, 266 (1998)). In the normal case, an inmate must be given notice of the month and

year in which he will be reviewed for release on mandatory supervision at least thirty days before

7

the review takes place. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004).  If release

is denied, "the inmate must be informed in what respects he falls short of qualifying for early

release." *Ex parte Geiken*, 28 S.W.3d at 560 (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*

*Complex*, 442 U.S. 1, 16 (1979)).  Due process, however, does not require a live hearing before

the Board, nor does it "require that the Board provide the particulars in the inmate's file upon

which it rested the decision to deny release." *Id.* (citations omitted).

Here, Petitioner does not deny that he received notice or a meaningful opportunity to be

heard prior to the Board's decision.[5]  In fact, the record reflects that Petitioner was informed of his

next review date well in advance of thirty days before the review occurred and was provided an

opportunity to submit any information he wanted the Board to consider when making its decision.[6]

(Docket No. 17-1, at 4.)  Petitioner was also given information as to why he did not qualify for

release.  (*Id.*)  Contrary to Petitioner's arguments, the Board was not required to provide or disclose

any findings or evidence related to its denial of release to DMS, nor is there a right to be heard in

person before the Board.  *See Boss v. Quarterman*, 552 F.3d 425, 426, 429 (5th Cir. 2008) (holding

---

[5] In his "Motion for Judgment as Matter of Law," Petitioner claims that he was "not afforded to present any evidence for release to mandatory supervision to his lead voters[,] Fred Solis, Anthony Ramirez, and Charles Speier."  (Docket No. 20, at 2.)  Review of Petitioner's § 2254 petition and supporting memoranda confirm that Petitioner is *not* asserting a general challenge that he was not afforded an opportunity to be heard; instead, Petitioner takes issue with the fact that he was not able to appear before certain Board members.  As discussed above, however, there is no right to a live hearing before the Board. In any event, Petitioner does not claim that he was harmed in some way by any alleged procedural defect. *See Brown v. Stephens*, No. 4:13-cv-709-O, 2013 WL 6189608, at *4 (N.D. Tex. Nov. 26, 2013) (holding that Texas inmate received all the process he was due regarding his denial of release to DMS and stating that "[w]ithout a showing of prejudice attributable to the alleged procedural defect, no relief is warranted"); *Mighell v. Quarterman*, Civil Action No. 4:04-cv-798-Y, 2007 WL 120001, at *5 (N.D. Tex. Jan. 18, 2007) (same).

[6] Although the record does not contain a copy of the notice Petitioner was given regarding his mandatory supervision review in July 2019, Respondent has provided an affidavit from Charley Valdez, a program supervisor in TDCJ's Classification and Records department, affirming that Petitioner was given timely notice.  (*See* Docket No. 17-1, at 2–6.)

8

inmate received due process when the Board's decision denying release to DMS listed statutory reasons for the denial but did not offer any evidence from the record to support its findings); *Greenholtz*, 442 U.S. at 15 (finding that due process does not require that the parole board provide the particulars in the inmate's file upon which it rested the decision to deny release); *Ramirez v. Stephens*, No. V-15-47, 2015 WL 9303122, at *2–3 (S.D. Tex. Dec. 22, 2015) (rejecting petitioner's argument that the Board's failure to make "specific findings" when denying release to DMS violated due process); *Hogan v. Davis*, No.A-16-CA-421-RP, 2016 WL 4398543, at *4 (W.D. Tex. Aug. 17, 2016) (explaining that the Board is not required to produce evidence in support of its decision denying release to DMS) (citing *Boss*, 552 F.3d at 428–29), *report and recommendation adopted*, No. 1:16-CV-421-RP, 2017 WL 401277 (W.D. Tex. Jan. 30, 2017); *Ex parte Geiken*, 28 S.W.3d 553 at 560 (finding that due process does not include the right to a live hearing). To the extent that Petitioner claims that the Board's decision to deny release to DMS is arbitrary and capricious, this argument fails as well. *See, e.g.*, *Hogan*, 2016 WL 4398543, at *4 (rejecting petitioner's challenge that the Board's reasoning and the guidelines it follows are too vague or arbitrary) (citing *Ex parte Geiken*, 28 S.W.3d at 557); *Hernandez v. Thaler*, No. A-10-CA-78 SS, 2010 WL 2756756, at *5 (W.D. Tex. July 9, 2010) (same).

In sum, Petitioner's due process rights were not violated in the Board's denial of his release to DMS. Petitioner has failed to show that the state courts' rejection of his claims is contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). Petitioner's claims challenging the denial of release to DMS should thus be dismissed.

2.    Good Time Claim

Petitioner also argues that the Board's decision denying his release on DMS "has revoked all credits earned without a formal hearing and requisite due process." (Docket No. 2, at 6.)

9

Respondent argues that this claim is moot because Petitioner has not lost any good time or work time. (Docket No. 17, at 16–18.)

Respondent has submitted documentation that indicates that Petitioner has not lost any good time or work time as a result of his denial to DMS. (*See* Docket No. 17-3.) Petitioner has not responded to Respondent's argument that his claim is moot, nor has he provided any probative summary judgment evidence controverting Respondent's evidence that shows that he has not lost any good time or work time. Accordingly, because Petitioner has not lost any good time or work time, his claim is moot and it should be dismissed.

### III. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Petitioner's Motion for Judgment as Matter of Law (Docket No. 20) be DENIED, that Respondent's Motion for Summary Judgment (Docket No. 17) be GRANTED, that Petitioner's § 2254 habeas petition (Docket Nos. 1, 2) be DENIED, and that this action be DISMISSED. For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

### CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of § 2255 proceedings). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on their merits. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable or wrong the conclusion that Petitioner's claims lack merit, nor are the claims adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a COA.

## **NOTICE TO THE PARTIES**

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo

review by the District Court on an issue covered in this Report and, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the District Court.

      DONE at McAllen, Texas on _____May 20_____, 2021.


_____
Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE